IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,                                             CR-S-10-182 KJM

    vs.

CHRISTOPHER CHELGREN,

    Defendant.                                       ORDER

_____/

        Defendant Christopher Chelgren is charged in an information as follows: possession of marijuana in violation of 21 U.S.C. § 844, careless or reckless driving in violation of 36 C.F.R. § 261.54(f) and minor in possession of alcohol in violation of 36 C.F.R. § 261.58(bb).  He has filed a motion to suppress physical evidence seized and all statements obtained on February 6, 2010 following a traffic stop.  He argues that the stop was not justified by reasonable suspicion of any traffic violation; the stop was improperly prolonged; he did not consent to the search of his car; he was questioned improperly before he was given Miranda warnings; and both his waiver of his right to remain silent and his statements were not voluntary.

        On July 28, 2010, the court held a hearing on defendant's motion to suppress. Rebecca Kaiser, Certified Law Student, appeared for defendant, who was present; Robert Sweetin, Certified Law Student, appeared for the government.

1

I. Facts[1]

Ken Marcus has been a law enforcement officer with the United States Forest Service since 2007. As part of his training, he received instruction on identifying the objective signs of marijuana use, which include red, dilated eyes, debris in the mouth, and tremors. He relies on a card, entered into evidence as Government's Exhibit 1, which lists some of the symptoms of such use.

Officer Marcus also has been trained on identifying the drug by smell and sight. Since becoming a law enforcement officer, he has had numerous encounters with people using marijuana in the national forest.

On February 6, 2010, Officer Marcus was on patrol in the Placerville District of the El Dorado National Forest, in Sierra Tahoe's Parking Lot E, a special use area. The parking lot was perhaps seven-eighths full, pedestrians were in the area and there were some people sledding on a nearby hill. At 12:04 p.m., Marcus saw a car, a Subaru, in a sideways skid and stopped it for reckless driving.

When Officer Marcus reached the car, he asked defendant, the driver, for his license, registration and proof of insurance. He also asked why defendant and his two passengers were not wearing their seatbelts and then inquired, "Who has marijuana in this vehicle?" Officer Marcus testified he could smell freshly burnt marijuana as he stood at the driver's window.

The car's occupants denied having any marijuana and claimed they had not unfastened their seatbelts until the car stopped. Defendant said he had to get out of the car to comply with Marcus's renewed request for his driver's license. As defendant got out, Marcus

---

[1] The court relies on the DVD of the encounter, submitted by the defense, without objection from the government, and on the testimony taken at the hearing. Although the parties have not addressed the question of defendant's standing to challenge the search, the court finds that defendant, driving his mother's car, demonstrated a subjective expectation of privacy in the car, as demonstrated by his refusal to consent to search and the storage of his possessions in the car, and this expectation is one society would find to be reasonable. See Johnson v. United States, 604 F.3d 1016, 1020 (7th Cir. 2010).

1  recognized him and his mother's car from an arrest for possession of "hash" two years before.
2  Defendant asked for defendant's consent to search the car, but defendant said, "It's not necessary,
3  sir." Defendant continued to look for proof of insurance and called his mother to ask about the
4  registration.

5  Officer Marcus walked back to his own vehicle, but then returned to defendant's
6  Subaru when one of the passengers said he had the registration. Marcus took the proffered
7  documents. Standing at the passenger window, Marcus said, "Now I'm telling you for a fact I
8  smell marijuana." He testified that the odor of marijuana was much stronger from the passenger
9  side of the car. He acknowledged that the back seat passenger was smoking a cigarette, but
10 testified at hearing that the smell of marijuana is different and distinct from cigarette smoke.

11 Officer Marcus then questioned defendant and passengers about the presence of
12 marijuana or a pipe or the use of the car to transport marijuana earlier. Defendant conceded he
13 may have had marijuana in the car after he picked up his prescription from "the cannabis club"
14 sometime earlier, but denied there was any marijuana or a pipe in the car.

15 Officer Marcus said he had probable cause for a search of the car. At 12:11 p.m.,
16 he ordered defendant and the passengers out of the car so he could undertake the search. In the
17 back seat, Marcus found three beers and an open bottle of hard lemonade. One passenger, who
18 claimed to be twenty-one, said the alcohol was his. After Marcus warned him that making a false
19 statement was an offense and administered Miranda[2] warnings, the passenger denied the alcohol
20 was his. Marcus told defendant he would be cited for being a minor in possession of alcohol
21 because it was his car.

22 Officer Marcus then continued his search and found a plastic grocery bag
23 containing a sealed jar of a substance he believed to be unburnt marijuana and a marijuana pipe
24 and a pack of cigarettes. Defendant denied the marijuana was his. The passenger who had been

25 _____
26     [2]   Miranda v. Arizona, 384 U.S. 436 (1966).

3

seated closest to the marijuana also denied it was his.  Marcus Mirandized the passenger, who invoked his right to remain silent, and handcuffed him as part of the investigation.  Around 12:23 p.m., Marcus Mirandized defendant, but did not handcuff him or tell him he was under arrest because he was being basically cooperative.  He asked if defendant wanted to talk to him and defendant said yes.  Marcus had defendant stick out his tongue and saw a green stripe of marijuana debris, which is one sign of marijuana use as listed on Exhibit 1.  When defendant said he had not smoked that day, Deputy Frisby -- an El Dorado County Sheriff's officer who had arrived on the scene -- asked if defendant was stupid because he was arguing with someone who had been doing this longer than defendant had been alive.  Marcus also noticed that defendant's pupils were dilated, which is another possible sign of marijuana use.  Although Marcus believed defendant had used marijuana, a reasonable inference to be drawn from his testimony is that he did not believe defendant was under the influence of the drug.

Officer Marcus continued his search and found two small baggies of marijuana in the driver's area of the car, each labeled as medical marijuana.

There were vehicles and pedestrians in the area, as well as Sierra-Tahoe security guards.  As noted, Deputy Frisby from the El Dorado County Sheriff's Department had arrived.

At the conclusion of the search, Marcus took defendant and one of the passengers to the Sierra Tahoe Security Office because the resort had asked that any employees found to have smoked marijuana be brought to the office.   Defendant was eventually released and his car was not impounded.

In Office Marcus's previous encounter with defendant, he took defendant to El Dorado County Jail, but later took him to juvenile hall because he was underage at the time.

Defendant testified that on February 6, 2010 he worked at Sierra Tahoe as a parking lot attendant.  He got to work at 7:00 a.m. and took his lunch break at noon.  He had not smoked marijuana that day.

II. The Initial Stop, Its Duration, And The Search Of The Car

Because a traffic stop implicates the Fourth Amendment, it must be based on a reasonable suspicion that the vehicle's occupants have broken the law. Delaware v. Prouse, 440 U.S. 648, 663 (1979; United States v. Lopez-Soto, 205 F.3d 1101, 1104 (9th Cir. 2002). An officer's reasonable suspicion that the driver has violated a traffic law is a sufficient basis for a stop. Whren v. United States, 517 U.S. 806, 810 (1996). Whether an officer has a reasonable suspicion that a traffic violation has occurred is based on the totality of the circumstances. United States v. Arvizu, 534 U.S. 266, 273 (2002). In this case, Marcus's testimony is bolstered by the DVD submitted by the defense showing that portion of defendant's driving prompting the stop. See Scott v. Harris, 550 U.S. 372, 378 (2007). The video shows the Subaru skidding sideways in the parking lot, as well as other vehicle traffic in the area. Officer Marcus's testimony confirms there were pedestrians in the parking lot and people sledding on a hill nearby.

Officer Marcus testified that he stopped defendant because he believed he had violated 36 C.F.R. § 261.54(f). That regulation provides, in relevant part:

> When provided by an order, the following are prohibited:
>
> . . . . . . . . . .
>
> (f) Operating a vehicle carelessly, recklessly or without regard for the rights or safety of other persons or in a manner or at a speed that would endanger or be likely to endanger any person or property.

Although the court has found no case law interpreting this subsection, there are cases that consider traffic stops based on similar regulations or statutes. For example, in United States v. Kikimura, 698 F.Supp. 546 (D.N.J. 1988), the defendant was cited for violating a New Jersey statute that prohibits driving "carelessly, or without due caution or circumspection, in a manner so as to endanger, or be likely to endanger, a person or property . . . ." Id. at 556. The officer had stopped the defendant after observing him driving 25 m.p.h. in a parking lot and coming within five feet of parked cars. The court credited the officer's testimony that by coming

/////

within five feet of parked cars, the defendant might have injured someone leaving one of those cars. The court upheld the stop.

Similarly, in United States v. Edwards, 563 F.Supp.2d 977 (D. Minn. 2008), police stopped the defendant, who had been squealing his tires as he went around corners and who sped up and made some erratic turns after the officer pulled up behind him. The court upheld the stop based on a violation of the Minnesota law that criminalized driving "carelessly or heedlessly in disregard of the rights of others, or in a manner that endangers or is likely to endanger any property or any person, including the driver or passengers. . . ." Id. at 1002.

In this case, defendant's car skidded in a parking lot busy with other cars and pedestrians and near a hill where people were sledding. Officer Marcus's stop was based on his reasonable suspicion that defendant was driving in a manner likely to endanger others.

This determination does not end the inquiry, for "a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005).

> Pursuant to a valid traffic stop, an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation. The detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop . . . .

United States v. Banuelos-Romero, 597 F.3d 763, 766-67 (5th Cir. 2010) (citation omitted); see also United States v. Munoz, 590 F.3d 916, 920-21 (8th Cir. 2010) ("After making a traffic stop, an officer may detain the driver while he completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." (citation omitted)); United States v. Townsend, 305 F.3d 537, 541 (6th Cir. 2002) ("To detain the motorist any longer than is reasonably necessary to issue the traffic citation, . . ., the officer must have reasonable suspicion that the individual has engaged in more extensive

6

criminal conduct."). If the traffic stop could be deemed to be prolonged in this case, it was not the result of Officer Marcus's actions, but rather stemmed from the length of time it took defendant and his passengers to produce the documentation Marcus sought: as the video shows, defendant could not produce his driver's license without getting out of the car and rummaging around in the back and did not know where to look for the registration without calling his mother. It was at 12:11 p.m., or seven minutes after the initial stop, that the passenger called Marcus back to the car to retrieve the registration and Marcus determined that he had probable cause to search the car based on the stronger smell of marijuana emanating from the passenger side.

Although the stop of a car based on reasonable suspicion of a traffic violation does not justify the search of the car, probable cause to search the car may arise during the course of the detention and may justify the warrantless search of the car, including the search of containers in the car that may conceal the object of the search. Wyoming v. Houghton, 526 U.S 295, 301 (1999); Colorado v. Bannister, 449 U.S. 1, 3-4 (1980); Banuelos-Romero, 597 F.3d at 767. In this case, before Officer Marcus had completed the checks and the paperwork reasonably related to the purpose of the stop, he detected the odor of burnt marijuana coming from the interior of the car. This smell alone established probable cause to search the interior of the car. Maryland v. Dyson, 527 U.S. 465, 467 (1999) (warrantless search justified by probable cause to believe car contains contraband); United States v. Staula, 80 F.3d 596, 602-03, 604 (1st Cir. 1996) (when nothing contradicted officer's statement that he smelled marijuana, he had probable cause to search interior of the car even though he did not mention the odor when he first detected it); United States v. Mosby, 541 F.3d 764, 768 (7th Cir. 2008) (smell of marijuana is enough to justify search of car); United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) (same).
/////
/////
/////

II. <u>Miranda Warnings</u>

Defendant argues he was in custody and thus should have been given <u>Miranda</u> warnings before Officer Marcus elicited his many denials of the presence of marijuana in the car.

In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the Supreme Court held that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

<u>Id</u>. at 444.  A person is in custody for <u>Miranda</u> purposes when there is "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest," which is to be determined by considering "how a reasonable man in the suspect's position would have understood his situation." <u>Stansbury v. California</u>, 511 U.S. 318, 322, 324 (1994) (internal quotation omitted).

In <u>Berkemer v. McCarty</u>, 468 U.S. 420 (1984), the Supreme Court considered "whether the roadside questioning of a motorist detained pursuant to a routine traffic stop should be considered 'custodial interrogation'" for purposes of <u>Miranda</u>. <u>Id</u>. at 435.  The Court rejected the idea that every contact between law enforcement officers and suspects or citizens should be preceded by <u>Miranda</u> warnings even though a person is seized for Fourth Amendment purposes when stopped for a traffic violation, finding two factors important.  First, the detention associated with a traffic stop is presumptively brief, unlike questioning at the police station, which often continues until it yields the answers sought by police.  Second, a motorist generally does not feel completely at the mercy of the police during a traffic stop because "[p]assersby, on foot or in other cars, witness the interaction," and because there generally are only one or two officers involved.  <u>Id</u>. at 438-39.  It found "the atmosphere . . . substantially less 'police dominated'" than a typical <u>Miranda</u> situation.  <u>Id</u>.

/////

1    The defense seeks to distinguish <u>Berkemer</u> on the ground that the stop quickly
2 turned from the processing of a traffic violation into a criminal investigation outside the scope of
3 <u>Berkemer</u>. It relies on Ninth Circuit authority on the question of custody for <u>Miranda</u> purposes.
4 Under that authority, this court must consider several, non-exclusive factors:

> (1) the language used to summon the individual; (2) the extent to
> which the defendant is confronted with evidence of guilt; (3) the
> physical surroundings of the interrogation; (4) the duration of the
> detention; and (5) the degree of pressure used to detain the
> individual.

<u>United States v. Kim</u>, 292 F.3d 969, 974 (9th Cir. 2002). It is undisputed that when Officer
Marcus first approached the car, he asked about marijuana; then five minutes later, he said he
smelled marijuana and had probable cause to search the car. It also is undisputed that Marcus
asked defendant about his prior possession of hash and about the presence of marijuana in the
car, and accused him of having smoked marijuana after looking at his tongue. The video also
shows that someone, presumably Deputy Frisby, called defendant "stupid" for questioning
Marcus's conclusions. On the other hand, the encounter was brief – Marcus read the <u>Miranda</u>
warnings to defendant approximately sixteen minutes after stopping the car – and occurred
during the day in a public parking lot. Moreover, the encounter was not police dominated; while
Deputy Frisby and some Sierra Tahoe security guards were somewhere off-camera, Frisby
chimed in only once during the search and questioning, leaving Marcus to deal alone with
defendant and his passengers. Finally, defendant retained his cell phone, which he used to
contact his mother to ask about the registration papers. The court does not find that defendant
was in custody for <u>Miranda</u> purposes.

III. <u>Involuntary Miranda Waiver And Statements</u>

Although it is not entirely clear, it appears that defendant is arguing that both his
waiver of his <u>Miranda</u> rights and the ultimate statements he made were not voluntary. He alleges
that Officer Marcus's repeated accusations, coupled with his application of handcuffs to a

/////

passenger after the latter invoked his right to remain silent, were coercive.  The standard for determining voluntariness is the same in both instances:

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Colorado v. Spring, 479 U.S. 564, 573 (1987) (citation omitted); Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir. 1991) (test is the same for voluntariness of statements).  A statement given after a voluntary Miranda waiver is rarely found to be involuntary.  DeWeaver v. Runnels, 556 F.3d 995, 1003 (9th Cir.), cert. denied, ___ U.S. ___, 130 S.Ct. 183 (2010).

Although Officer Marcus's questioning was pointed and accusatory, it was brief and occurred out in the open.  Compare Jackson v. McKee, 525 F.3d 430, 433-34 (6th Cir. 2008) (collecting cases where length of interrogation rendered waiver or statement involuntary).  It also is true that Marcus handcuffed the passenger after that person declined to waive his Miranda rights, but courts have found arrests or threats to arrest others coercive only when those others were family members and when the arrests were not supported by probable cause.  See United States v. Finch, 998 F.2d 349, 356 (6th Cir. 1993) (threat to arrest mother and girlfriend coercive when nothing suggested the women knew anything about defendant's drug activities); compare United States v. Ortiz, 499 F.Supp.2d 224, 232-33 (E.D.N.Y. 2007) (threat to arrest family member not coercive if arrest would be supported by probable cause); see also United States v. Cotton, 223 F.Supp.2d 1039, 1048 (D.Neb. 2002) (handcuffing passenger was not the equivalent of interrogation).  The court finds that defendant's Miranda waiver was voluntary.

/////

/////

IT IS THEREFORE ORDERED THAT:

1. The motion to suppress (docket no. 7) is denied; and

2. This matter is placed on calendar on August 26, 2010 for status.

DATED: August 9, 2010.

                                          U.S. MAGISTRATE JUDGE

2

chel0182.mts